CIVILLE & TANG, PLLC
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
FACSIMILE: (671) 477-2511




*Attorneys for Defendant In Han Cha*

## IN THE UNITED STATES DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 08-00008 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | **DEFENDANT IN HAN CHA'S MEMORANDUM IN SUPPORT OF MOTION FOR THE RETURN OF SEIZED PROPERTY AND THE SUPPRESSION OF EVIDENCE** |
| SONG JA CHA, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

### I. INTRODUCTION

Defendant In Han Cha has moved this Court for an order suppressing evidence and for the return of certain items illegally seized by the government. This memorandum is submitted in support of that motion.

### II. FACTUAL BACKGROUND

According to discovery provided by the government, on January 13, 2008, at approximately 12:15 a.m., a number of Guam Police Department (GPD) personnel went to the Blue House Lounge to investigate a complaint of a female employee who claimed her passport had been taken from her

by Defendant Song Ja Cha. Shortly thereafter, the police went into the Blue House Lounge building and also into a separate part of the building where there were private rooms and the bedroom of Defendant In Han Cha. At approximately 1:30 a.m. on January 13th, the police ordered the establishment closed and seized both the lounge and residential areas by prohibiting Defendant In Han Cha from entering. No search warrant had been obtained.

The police continued to hold the lounge and residential area, and did not obtain a warrant until about 10:25 A.M. on January 14, 2008, and executed at about 2:14 P.M. on that same day. This period of time, about thirty-three hours fifteen minutes from the time the GPD seized the building to the time of obtaining the warrant, was unreasonable. The GPD obtained evidence from their entry into the building without a warrant.

When finally obtained the warrant was overbroad. For example, it listed among the items to be "searched and seized" such items as "[i]llegally obtained proceeds derived from violations of federal or state statutes concerning prostitution and/or human trafficking, such as U.S. currency, gold, silver, stocks, bonds, expensive electronic equipment and the like," Warrant, Attachment A, Item 7, and [c]urrency, financial instruments, precious metals, jewelry, vehicle registration receipts, property titles, and other items of value and/or proceeds of transactions relating to obtaining, transferring, secreting, profiteering or spending large sums of money made from engaging in prostitution and/or human trafficking. Warrant, Attachment A, Item 9.

It is anticipated that at the hearing on this matter, the defense will present facts showing that the $250,000 in cash taken from the Defendant In Han Cha's bedroom was being held for Asia Construction, a Guam corporation, of which Defendant In Han Cha was president. The money was for use in bidding on construction contracts and Asia Pacific has been unable to pursue its business

2

because of the money being seized and not returned. Discovery shows that the government has not retained the actual cash seized from In Han Cha's residence. In a January 31, 2008, memorandum from POIII A.V. Camacho, CAPS Unit Supervisor, CIS, GPD, to the Officer-In-Charge, Evidence Control Section, Officer Camacho requesting the signing out of all U.S. Currency confiscated in this case, stating that "[t]he evidence will be deposited into a local bank and a Cashier's Check for the amount confiscated will be relinquished to the Immigration & Customs Enforcement (ICE) as the case will be adopted by the Federal Court." It is quite clear, as pointed out by the court in *In the Matter of the Search of 4330 North 35th Street, Milwaukee, Wisconsin*, 142 F.R.D. 161 (E.D. Wis. 1992), with respect to seized cash that had been deposited in a bank, "the money itself has no evidentiary value, since the physical currency was reintroduced into general circulation when the government deposited the cash in a . . . bank." *Id.* at 179.

### III. ARGUMENT

The Fourth Amendment to the United States Constitution[1] provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

---

[1] The Fourth Amendment is extended to Guam in 48 U.S.C. § 1421b(u):

> The following provisions of and amendments to the Constitution of the United States are hereby extended to Guam to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States: article I, section 9, clauses 2 and 3; article IV, section 1 and section 2, clause 1; the first to ninth amendments inclusive; the thirteenth amendment; the second sentence of section 1 of the fourteenth amendment; and the fifteenth and nineteenth amendments.

48 U.S.C. § 1421b(u) (WESTLAW current through P.L. 110-201 approved 4-18-08).

## A. SEIZURE WITHOUT A WARRANT.

In Han Cha's bedroom, his residence, was seized by the police for over thirty hours before a search warrant was obtained. In Han Cha had a legitimate and reasonable expectation of privacy in the bedroom which was protected by the Fourth Amendment. *See Minnesota v. Olson*, 495 U.S. 91, 95 (1990) ("Since the decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), it has been the law that 'capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). A subjective expectation of privacy is legitimate if it is "one that society is prepared to recognize as 'reasonable,' " *id.,* at 143-144, n. 12, 99 S.Ct., at 430, n. 12, quoting *Katz, supra,* at 361, 88 S.Ct., at 516 (Harlan, J., concurring).") (overnight guest in upstairs duplex had reasonable expectation of privacy protected by the Fourth Amendment).

The reasonableness or lack thereof of seizing property before obtaining a search warrant in the first place must be addressed in light of *Illinois v. McArthur*, 531 U.S. 326 (2001). In *McArthur* the Supreme Court held that a police officer's refusal to allow residents to enter their homes without a police officer until a search warrant was obtained was a reasonable seizure that did not violate the Fourth Amendment. Police officers, with probable cause to believe that McArthur had hidden marijuana in his home, knocked on McArthur's door and requested his consent to search his home. He refused. The investigating police officers then told McArthur that he was to stay outside of his home and could not reenter it unless accompanied by a police officer. McArthur was prevented from entering the home unaccompanied for about 2 hours while the police obtained a search warrant. When the warrant was issued, the officers searched McArthur's home

4

and found drug paraphernalia and marijuana, resulting in McArthur's arrest. He was charged with misdemeanor possession of those items. He moved to suppress the evidence on the ground that it was the "fruit" of an unlawful police seizure, namely, the refusal to let him reenter his home unaccompanied.

The central requirement of the Fourth Amendment is one of reasonableness. *McArthur*, 531 U.S. at 330. Although seizures of personal property are presumed unreasonable unless accomplished pursuant to a warrant, *ibid.*, there are exceptions to this rule involving special law enforcement needs and diminished expectations of privacy. *Id.* at 330-31. The Court recognized that the circumstances in *McArthur* this case were exigent, and the seizure of McArthur's home was tailored to that exigency: it was as limited in time as possible and as unintrusive as possible. *Id.* at 332-33. In reaching its decision, the Court balanced both privacy and law enforcement concerns to determine if the intrusion was reasonable. *Id.* at 331.

The Court cited four reasons for its conclusion that the seizure of McArthur's home was reasonable. First, the police had probable cause to believe that McArthur's home contained evidence of a crime and unlawful drugs. *Id.* at 332-33. Second, the police had good reason to fear that, unless the home was seized, McArthur would destroy the drugs before they could return with a warrant. *Id.* at 332. Third, the police avoided an unnecessary, warrantless entry and warrantless arrest simply by preventing McArthur from entering his home unaccompanied (McArthur was not detained). *Id.* at 332. Fourth, they imposed the restraint for a limited period, only as long as reasonably necessary for them, acting with diligence, to obtain the warrant. *Id.* at 332-33. The third and fourth points made by the Court are the most important considerations to law enforcement. The determination of reasonableness is based on the specific facts of each case, that

5

is; the specific circumstances and the options available to--and ultimately taken by--the police. *Id.* at 330-31.

Anything police can do to be less intrusive to the subject's privacy will be well received by a court later evaluating their reasonableness. Like any temporary Fourth Amendment seizure (such as an investigative detention), any unnecessary delay or lack of investigative diligence may render a seizure unreasonable. In *McArthur* the Court found the police duration of the seizure was reasonable:

> Fourth, the police imposed the restraint for a limited period of time, namely, two hours. Cf. *Terry v. Ohio,* supra, at 28, 88 S.Ct. 1868 (manner in which police act is "vital ... part of ... inquiry"). As far as the record reveals, this time period was no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant. Compare *United States v. Place,* 462 U.S., at 709-710, 103 S.Ct. 2637 (holding 90-minute detention of luggage unreasonable based on nature of interference with person's travels and lack of diligence of police), with *United States v. Van Leeuwen,* 397 U.S. 249, 253, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970) (holding 29-hour detention of mailed package reasonable given unavoidable delay in obtaining warrant and minimal nature of intrusion). Given the nature of the intrusion and the law enforcement interest at stake, this brief seizure of the premises was permissible.

531 U.S. at 332-333.

Probable cause for the seizure was also lacking at the time the police seized the building. *See U.S. v. Gonsalves,* Criminal No. 06-00080(03) SOM, 2008 WL 148938, *5 (D. Hawai'i Jan. 16, 2008) (probable cause at the time of the seizure). At the time the police seized the building, about 1:30 a.m. on January 13th, there was no probable cause to believe that the buildings contained evidence of a crime.

6

The seizure of the building, both its commercial and residential rooms and units, was without probable cause at the time and the thirty-three hours between the seizure and obtaining a warrant was far outside the pale of reasonableness.

### B.  SEARCH WITHOUT A WARRANT.

The police also conducted a search of the premises in the early morning hours of January 13th without a warrant. Some of the results of the intrusion into the premises are set forth in the Affidavit filed in the application for the warrant. "The government bears the burden of justifying a warrantless search." *U.S. v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991) (per curiam). The evidence obtained in this case was the fruit of an unlawful warrantless search and should be excluded. *Powell v. Nevada*, 511 U.S. 79, 85 fn. (1994) ("A court's postsearch validation of probable cause will not render the evidence admissible. *See Vale v. Louisiana*, 399 U.S. 30, 35, 34, 90 S.Ct. 1969, 1972, 1972, 26 L.Ed.2d 409 (1970) (absent circumstances justifying a warrantless search, it is 'constitutional error [to] admi[t] into evidence the fruits of the illegal search,' 'even though the authorities ha[d] probable cause to conduct it').").

Furthermore, there is a factual issue as to whether the police would have sought a warrant had they not conducted the illegal warrantless search, *United States v. Duran-Orozco*, 192 F.3d 1277, 1281 (9th Cir.1999) (directing the district court on remand to make an explicit factual finding as to whether the agents would have sought a search warrant had they not conducted an illegal warrantless search), and if it is determined that the police would not have sought the warrant, the evidence obtained under its authority must be suppressed. *Ibid.*

7

Case 1:08-cr-00008  Document 74  Filed 04/25/2008  Page 7 of 10

## C. THE WARRANT WAS OVERBROAD LACKING THE REQUIRED PARTICULARITY.

As noted above, the warrant was unconstitutionally overbroad. A valid warrant must describe particularly the places that officers may search and the types of items that they may seize. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986); Clark, 31 F.3d at 836. This requirement exists to "prevent[ ] general, exploratory searches and indiscriminate rummaging through a person's belongings." *Spilotro*, 800 F.2d at 963. The Ninth Circuit has summarized the law as follows:

> A search warrant must allege with reasonable particularity the types of items that may be seized. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986). Otherwise, it cannot provide meaningful guidance to the officer charged with its execution. We have invalidated a warrant authorizing the seizure of "corporate books and records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules, of [certain corporations], which are the fruits and instrumentalities, of violations of Title 26, U.S.C. § 7201." *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir.1982). In *Cardwell*, the court ruled that the search warrant was not sufficiently particular because it contained no guidelines to aid officers in determining what may or may not constitute evidence of a violation of the statute. *Id.* at 77-78. For similar reasons, in *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir.1985), we held overbroad a warrant that authorized seizure of "evidence of a violation [of] 21 U.S.C. §§ 841, 846."
>
> The warrant in this case authorized a search for: "narcotic controlled substances, drug paraphernalia, marijuana cultivation equipment, instructions, notes, cultivation magazines, currency, documents, and records and *fruits and instrumentalities of [a] violation of Title 21, U.S.C. § 841(a)(1).*" (Emphasis added.) We agree with the magistrate judge that the emphasized phrase rendered the warrant facially overbroad. The warrant provides no guidance to the executing officers concerning the items to be sought or seized; anything, or any nature or description, deemed to be a fruit or instrumentality of the alleged crime would qualify. Nor was the general phrase of the warrant limited by a description in an attached affidavit. *See United States v. Luk*, 859 F.2d 667, 676 (9th Cir.1988) (warrant's overbreadth can be cured by accompanying affidavit that more particularly describes items to be seized).

8

> It was apparent on the face of the warrant that the catchall phrase authorizing seizure of "fruits and instrumentalities of [a] violation of" 21 U.S.C. § 841(a)(1) did not adequately describe the items to be seized. *See Brown*, 951 F.2d at 1004 & n. 1. In light of that facial deficiency, the executing officers could not reasonably rely on it, under the objective test of *Leon*. *See Leon*, 468 U.S. at 923, 104 S.Ct. at 3421 ("a warrant may be so facially deficient- *i.e.*, in failing to particularize ... the things to be seized- that the executing officers cannot reasonably presume it to be valid"); *United States v. Crozier*, 777 F.2d at 1381 (agent cannot reasonably rely on warrant authorizing seizure of "evidence of violation" of 21 U.S.C. 841 and 846).
>
> The remedy for an overbroad search warrant is suppression of the seized evidence. The court need suppress, however, only those items seized pursuant to the invalid portion of a search warrant. *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir.), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). We remand to the district court the limited question of what evidence was obtained under the overbroad portion of the warrant and direct the suppression of that evidence.

*U.S. v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994);*see also U.S. v. Sears*, 411 F.3d 1124, 1127 (9th Cir. 2005) (discussing particularity requirement). ("Finally, although the portion of the search warrant that authorized the seizure of "[a]ny and all ... items of value" that were proceeds of or used to facilitate Popham's drug trafficking was overbroad,. . ."); *U.S. v. Popham*, 382 F.Supp.2d 942, 9554 (E.D. Mich. 2005) ("Any and all U.S. currency, gold, jewelry, stocks, bonds, certificates of deposit and items of value being proceeds of or used to facilitate trafficking controlled substances," held overbroad), *aff'd U.S. v. Popham*, 250 Fed. Appx. 170 (6th Cir. 2007).

## IV. CONCLUSION

For the foregoing reasons. Defendant In Han Cha moves this Court to order the suppression of the evidence seized from the residential and commercial areas of the Blue House and the return

9

of the cash illegally seized and which was being held by In Han Cha in has capacity as President of Asia Construction.

Respectfully submitted this 25th day of April, 2008.

**CIVILLE & TANG, PLLC**

By: _____
G. PATRICK CIVILLE
*Attorneys for Defendant In Han Cha*
