LEONARDO M. RAPADAS
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 08-00008 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **UNITED STATES' OPPOSITION** |
| | ) | **TO DEFENDANT'S MOTION FOR** |
| | ) | **THE RETURN OF SEIZED** |
| | ) | **PROPERTY AND THE** |
| | ) | **SUPPRESSION OF EVIDENCE** |
| IN HAN CHA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Comes now the plaintiff, United States of America, by and through its undersigned attorney, and moves this Honorable Court to deny the defendant In Han Cha's Motion for the Return of Seized Property and the Suppression of Evidence.

This Opposition is based on the following memorandum of points and authorities, the record in the Court's file, and any oral arguments or evidence that may be produced at the hearing in this matter.

## STATEMENT OF FACTS

The Complaint

On January 13, 2008, at 12:15 a.m., Ms. Elizabeth Aizawa and a young Chuukese woman identified as So. S. attempted to retrieve a passport from Song Ja Cha, Owner of the "Blue House". Song Ja Cha refused to return the passport to So.S. Song Ja Cha told So. S. that since she owned her money for a plane ticket and passport, she must sign a piece of paper, and then Song Ja Cha would call the police. Hearing this threat, Elizabeth Aizawa and So. S. contacted Guam Police.

Criminal Investigative Services ("CIS") received the complaint that Song Ja Cha was withholding a passport from the So. S. C.I.S. dispatched Officers, including an Officer fluent in the Chuukese language to the Blue House. Elizabeth Aizawa and So.S. were interviewed.

So. S. told the police that she was deceived into traveling to Guam to work at a restaurant job at the Blue House. Upon arrival, her passport was taken from her by In Han Cha, who handed it to Song Ja Cha. While in the Blue House, So.S. was instructed to sit in the kitchen and wait. So. S. realized that Blue House was not a restaurant, but a bar or nightclub. Song Ja Cha drove So.S. to a residence in Yigo, handed a man cash and left So.S. there. While at the residence, So.S. learned that the Blue House was place where young Chuukese girls were forced to perform sexual acts on male customers.

Guam Police Officers contacted Song Ja Cha at the Blue House. Song Ja Cha claimed she did not have So.S.'s passport. Song Ja Cha produced passports belonging to L.P., D.R., M.C., and Si.S. Song Ja Cha told Police that she possessed their passports because she was processing their health certificates and clearances. So.S. then asked the Police to bring out her two relatives – L.P. and M.C. Song Ja Cha stated there were no persons by those names in the

Blue House.

Officer Tan entered the Blue House and located L.P. and M.C. within the Blue House. They asked him to help D.R. and Si.S. get out of the Blue House. Officer Tan saw D.R. exit from a Comfort Room (#3) and noted a shirtless male, clinging to his unbuckled pants, and trying to hide behind a wall. Officer Tan spoke to the customer who stated that he was merely "kissing" D.R. because he was unable to afford sexual activity. D.R. later told Officer Tan that the customer paid $40 to engage in sexual activity and that he was touching her private parts, her vagina and breasts when Police arrived.

Each of the young women related that they were deceived into traveling to the Blue House believing they would be employed in a restaurant/waitress/store clerk capacity. Each of the young women related that upon arrival in Guam, their passports were taken by Song Ja Cha, In Han Cha, Freda Eseun or Saknin Weria. Each of the young women related that they were locked within the Blue House, and coerced into engaging in sexual acts with male customers. The young women also related that food was withheld from them if they refused to perform sexual acts. They related that their phone calls were monitored, and that Freda Eseun and Saknin Weria enforced Song Ja Cha's instructions. They were very fearful of Song Ja Cha (known to them as "MamaSan") and In Han Cha (known to them as "PapaSan"). They also related that they were not permitted to contact their relatives or discuss what transpired at the Blue House.

It is anticipated that Officers will testify that the property was seized approximately 8-9:00 a.m. on Sunday, January 13, 2008.

Guam Police Officer John A. Perez prepared an affidavit of probable cause in support of a search warrant and presented these facts to the Honorable Steven S. Unpingco, Judge, Superior Court of Guam. On January 14, 2008, at 11:00 a.m., the Honorable Steve S. Unpingco, Judge, Superior Court of Guam, issued a warrant to search the Blue House.

On January 14, 2008 at 12:30 a Police Officers John Perez and Sargent S. Amaguin conducted a briefing to execute the warrant. At 1:40 p.m., defendant In Han Cha contacted

-3-

Case 1:08-cr-00008    Document 84    Filed 05/09/2008    Page 3 of 17

Police telling them that he would be at the scene in 15 minutes.  He did not appear.  At 1:40 p.m., Police surveyed the Blue House and noticed that it was locked with metal security doors and locking devices.

At 2:11 p.m.,  Curtis Van de Veld informed Police he represented In Han Cha, Song Ja Cha, and their two employees Freda Eseun and Saknin Weria.  Curtis Van de Veld asked that the execution of the search warrant be postponed because he was in Court with defendant In Han Cha.  At 2:15 p.m., Guam Police executed the search warrant and documented the search with photographs and videotaping.

At 2:30 p.m., this same date, Officer D.A.Q. Santos found U.S. currency ($1,875), and receipts.  At 3:30, money, check cards, and a Navy I.D. card were confiscated.

At 4:15 Curtis Van de Veld and defendant In Han Cha arrived at the Blue House.  Curtis Van de Veld informed the Officers that In Han Cha was willing to lead the Officers to locations where he and his wife had hidden money ($250,000).  In Han Cha was permitted (with Police escort) onto the scene.  He pointed to an entertainment center, clothing, and flower vase where $100,000 in U.S. currency was found.  Police continued the execution of the search warrant and discovered an approximately $150,000 in U.S. Currency hidden in a bronze flower vase above a headboard and in clothing.  A total of $250,543.44 was found hidden in various locations within the Blue House.   The money was confiscated.

During the execution of the search warrant, at 5:10 p.m., Alex Thomas informed Police that he knew a young victim who ran away from Blue House.  She informed him that her passport was taken away by Song Ja Cha and was afraid to retrieve it as she was threatened by Song Ja Cha who "knew a lot of police officers".

//
//
//

# MEMORANDUM OF POINTS AND AUTHORITIES

I.   THE U.S. CURRENCY SHOULD NOT BE RETURNED AS IT IS EVIDENCE IN THE CASE AND IS MONEY THAT IS DIRECTLY OR INDIRECTLY THE RESULT OF SEX TRAFFICKING, CONSPIRACY, COERCION AND ENTICEMENT TO TRAVEL FOR PURPOSE OF PROSTITUTION AND FORFEITURE.

Defendant In Han Cha seeks the return of all U.S. currency confiscated from the Blue House.  Defendant In Han Cha states in his papers states:

> "It is anticipated that at the hearing on this matter, the defense will present facts showing that the $250,000 taken from the Defendant In Han Cha's bedroom was being held for Asia Construction, a Guam corporation, of which Defendant In Han Cha was president.  The money was for use in bidding on construction contracts and Asia Pacific has been unable to pursue its business because of the money being seized and not returned."  Defendant In Han Cha's Memorandum in Support of Motion for the Return of Seized Property and the Suppression of Evidence, P. 2-3.

"In order to qualify as a 'person aggrieved by an unlawful search and seizure, one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.  Rule 41(e) applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.' Jones v. United States, 362 U.S. 257 (1960).

The Government opposes the return of the U.S. Currency as it is needed for evidentiary purposes to be presented to a petite jury at the June 23, 2008 Jury Selection and Trial.

Appellate courts review the district court's interpretation of Rule 41(e) de novo.  In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 855 (9th Cir. 1991).

Federal Rules of Criminal Procedure Rule 41(g) provides as follows:

> (g) **Motion to Return Property**. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings. Fed.R.Crim. P. 41(g).

Under 41(g), a person deprived of his property may move for the property's return in the district court where the property was seized. Although rule 41(g) is ordinarily used to seek return of property after an indictment is issued, "district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant." Ramsden v. United States, 2 F.3d 322, 324 (9th Cir. 1993)(construing former Rule 41(e).[1] "These motions are treated as civil equitable proceedings, and therefore, a district court must exercise 'caution and restraint' before assuming jurisdiction. Id. "Generally, a Rule 41(e) motion is properly denied 'if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture, or the government's need for the property as evidence continues." U.S. v. Mills 991 F.2d 609 (9th Cir. 1993) citing U.S. v. Van Cauwenberghe, 934 F.2d 1048, 1061 (9th Cir. 1991). A criminal defendant is presumed to have the right to the return of his property once it is no longer needed as evidence, and the burden of proof is on the government to show "that it has a legitimate reason to retain the property." Id. The government may meet this burden by demonstrating a cognizable claim of ownership or right to possession adverse to that of the defendant. United States v. Palmer, 565 F.2d 1063, 1064 (9th Cir. 1977).

---

[1] The district court examined Kama's motion under Rule 41(e), the subsection that formerly governed motions to return property. Motions to return property are now relegated to Rule 41(g). H.R. Doc. No. 107-2003, at 420 (2002). With the change in the subsection, the language of Rule 41(g) has been amended "as part of the general restyling of Criminal Rules to make them more easily understood," but the substance of the rule has not changed. Fed.R.Crim.P. 41 note on 2002 amends.

The money seized is the unlawful proceeds from the sex trafficking of eight young women.  The victims in this case were confined to the Blue House and compelled to engage in nightly acts of prostitution for U.S. currency.  The defendants Song Ja Cha and In Han Cha received the currency directly from the customers themselves, or received the money from their employees defendants Freda Eseun and Saknin Weria who collected the money prior to each sexual act.  The money is not lawfully Song Ja Cha or In Han Cha's property because the money is the proceeds of acts of illegal prostitution which were performed at the Blue House.  This tainted money is not "lawfully" Song Ja Cha or In Han Cha's money as it is traceable to illegal activity.  Defendants are not entitled to illegal money any more than a drug dealer is entitled to the proceeds of his drug dealing.

Because there are pending criminal proceedings pending against Song Ja Cha and In Han Cha, there is a need for the property from an evidentiary standpoint and the government has a legitimate reason to retain the currency.  The currency will be utilized as evidence at trial.  It is contraband and is subject to Forfeiture as alleged in Count IV of the Indictment dated February 20, 2008.  The initiation of the forfeiture proceeding alone justifies denial of the motion to return seized property.  Floyd v. U.S., 860F.2d 999 (9th Cir. 1988).  Until and unless a jury determines that the currency is not linked or traceable to the sex trafficking, the money is not returnable to the defendants.  "It is well settled that the federal government may defeat a Rule 41(e) motion by demonstrating that the property is subject to federal forfeiture.  U.S. v. Fitzen, 80 F.3d 387, 389 (9th Cir. 1996).  "The court has the inherent power to order evidence returned at the conclusion of criminal proceedings unless the evidence is subject to forfeiture."  U.S. v. Premises Known as 608 Taylor Avenue, 584 F.2d 1297, 1302 (3rd. Cir., 1978).  "As noted in the Advisory committee notes to the 1989 Amendments to the rule: Rule 41(e) is not intended to deny the United States the use of evidence permitted by the Fourth Amendment and federal statutes, even if the evidence might have been unlawfully seized.  See, e.g., U.S. v. Calandara, 414 U.S. 338, 349 (Rule 41(e) does not constitute a statutory expansion of the exclusionary

rule." In re Search of 8420 Ocean Gateway Estates, 353 F.Supp. 2d 577 (D. Maryland, 2004).

The money is needed by the government as it is evidence to present to the jury at the June 23, 2008 jury selection and trial. "Reasonableness under all the circumstances must be the test when a person seeks to obtain return of property. The United States retention of property is reasonable if it has a need for the property in an investigation or prosecution. Advisory Committee Notes to the 1989 Amendment of Rule 41(e)." Ramsden v. U.S., 2 F.3d 322 (9th Cir. 1993). Because criminal charges are pending, the court should not entertain a motion for return of property prior to the conclusion of the criminal charges. "It is when the government *no longer needs* the property as evidence in an investigation that a presumption in favor of return arises." Fitzen, 80 F.3d at 388.

Defense quotes In the Matter of the Search of 4330 North 35th Street, Milwaukee, Wisconsin, 142 F.R.D. 161 (E.D. Wis. 1992) suggesting that the money has no evidentiary value because the currency was introduced into general circulation when deposited in a bank. To quote: "Unquestionably money itself has no evidentiary value, since the physical currency was reintroduced into general circulation when the government deposited the cash in a Chicago bank. The only continued justification for the retention of the money is the possibility that it may, in the future, be subject to forfeiture or tax assessment." This is justification for retention of the currency.

## II. THE WARRANTLESS ENTRY INTO BLUE HOUSE WAS JUSTIFIED BY EXIGENT CIRCUMSTANCES.

"There are two general exceptions to the warrant requirement for home searches: exigency and emergency. Under the exigency doctrine, a warrantless search of a home is permitted if there is probable cause to believe that contraband or evidence of a crime will be found at the premises and that exigent circumstances exist. U.S. v. Martinez, 406 F.3d 1160 (9th Cir. 2005) citing U.S. v. Lai, 944 F.2d 1434, 1441 (9th Cir. 1991). As a general rule, "we define

exigent circumstances as those circumstances that would cause a reasonable person to believe that entry … was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." U.S. v. Martinez, 406 F.3d 1160 (9th Cir. 2005).

Here, Officer Norbert Tan and other Officers had information that Song Ja Cha had tricked young girls to travel to Guam and had physically confined them to the Blue House. He knew that the Blue House was open for business. Officer Tan knew that Song Ja Cha was holding passports for several young Chuukese women. He knew that So. S. identified two of her relatives who were still within the Blue House.

The Officer's warrantless entry is justified under exigent circumstances because entry is required to prevent physical harm to young women at the Blue House and to prevent destruction of relevant evidence. To insist that Officer Tan and Guam Police Officers disregard the fact that young women were being held against their will and locked within the Blue House would frustrate legitimate law enforcement efforts.

In U.S. v. Brooks, 367 F.3d 1128, 1135 (9th Cir. 2004), the Court applied the exigency doctrine and condoned entry when Officers saw that a home was in disarray but the victim was not visible to the officers. The court held that officers had probable cause to suspect evidence of a crime and had an exigent need to enter the premises to make sure that the victim was safe. Like in Brooks, Guam Police Officers had an exigent need to ensure that the victims were safe. Their actions and entry was calculated to protect the safety of the young women.

The Sunday morning seizure of the residence is permissible as the Officers had "facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas, 517 U.S. at 696. The Officers had the physical passports of several young Chuukese women before them. The Officers had the statements of So. S. that her passport was being held, and that her relatives were within the Blue

House.  Song Ja Cha and In Han Cha's residence and the premises were secured while the Officers sought a warrant from the Superior Court.  This seizure was not unreasonable given probable cause to believe that contraband or evidence of the crimes of prostitution and human trafficking will be found at the Blue House.  The Supreme Court has held that because the seizure of a dwelling affects only possessory interests intruded upon by a search, "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents."  Segura v. U.S., 468 U.S. 796, 810 (1984).  Additionally, police entry is permissible as the premises were open to the public.

Defense counsel Civille cites U.S. v. Duran-Orozco, 192 F.3d 1277 (9th Cir. 1999) arguing that since there is no exception for the warrantless search, that a further finding must be made by the District Court that the officers would have sought the warrant anyways.    This case is not applicable because the entry of the premises was based on exigent circumstances.  In Duran-Orozco, Border Officers used night vision scope and saw eight people walking with backpacks near the Mexican border.  Agents saw footprints leading to a nearby home, Agents saw that the porch was freshly swept and a broom stood nearby the door and that burlap sacks had been placed on the ground.  Duran-Orozco, at 1280.  The Agents walked behind the residence and looked into a window and saw burlap bags containing marijuana.  The Court held a hearing and the Agents themselves admitted that they did **not** have exigent circumstances to look into the window.  The Court struck the portion of the warrant which contained the Agents' observations which were "the result of the warrantless unjustified search".   The Court remanded for a further hearing stating "The agents might not have had applied for a search warrant if they had not made their warrantless search at the back of the house and incorporated its fruits in the application for a warrant. We are not in a position to determine what they would have done. That is the job of the district court, which, after an evidentiary hearing, must make an explicit finding on this question." Duran-Orozco, at 1282.  Unlike Duran-Orozco, whose entry was

without any exceptions, the Officers here had exigent circumstances to enter the premises.

**III.   PRIVATE BUSINESSES ARE SUBJECT TO ENTRY BY LAW ENFORCEMENT.**

The Blue House was open for business and open to the public.  Defendant In Han Cha had no expectation of privacy in a business which is open to the public.  "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection."  <u>Katz v. United States</u>, 389 U.S. at 351.   "The Court has recognized that a business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context."  <u>G.M. Leasing Corp.</u>, 429 U.S. at 353.  Because the entry was made with official sanction of the Judge,  <u>See</u> is inapplicable because entry into the private business was made with official authority.

**IV.   SUFFICIENT PROBABLE CAUSE EXISTED FOR ISSUANCE OF THE SEARCH WARRANT.  THE EVIDENCE SHOULD NOT BE SUPPRESSED**.

For a search warrant to issue, the Fourth Amendment requires that there be "probable cause, supported by Oath or affirmation." U.S. Const. amend. IV.  Probable cause exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place" <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).   "A magistrate judge's finding of probable cause is entitled to great deference and this court will not find a search warrant invalid if the magistrate judge had a 'substantial basis' for concluding that the supporting affidavit established probable cause."  <u>United States v. Clark</u>, 31 F.3d 831, 834 (9th Cir. 1994).   "Thus, the trial court's determination that an affidavit provided probable cause to issue a search warrant will be upheld unless clearly erroneous."  <u>United States v. Bertrand,</u> 926 F.2d 838, 841 (9th Cir. 1991).  And if the court finds "'that under the totality of the circumstances the magistrate had a substantial basis for concluding that probable cause existed,' " the warrant will be upheld." <u>United States v. Hernandez-Escarsega</u>, 886 F.2d at 1563 (quoting

-11-

United States v. McQuisten, 795 F.2d 858, 861 (9th Cir. 1986). "We do not review a magistrate's determination of probable cause de novo." United States v. Alexander, 761 F.2d 1294, 1300 (9th Cir. 1985). That determination "should be paid great deference by reviewing courts." Gates, 462 U.S. at 236.

Using this standard, several facts support the finding of probable cause. The Officers received information that young women were tricked into traveling to Guam ostensibly for legitimate employment. The Officers knew that upon arrival, the victim's passports were withheld and the victims were informed by Song Ja Cha that if they tried to leave the Blue House, the Police would have them arrested, and that the victims were under video surveillance. The Police knew that the victims were compelled to perform acts of prostitution and that if they refused, that food would be withheld. They knew that at least two of the victims were not paid. These, and other facts presented to the Superior Court of Guam Judge provide the Judge with a substantial basis to conclude that there was probable cause to believe that acts of forced prostitution and human sex trafficking were occurring at the Blue House. These facts were presented to the Superior Court of Guam Judge Steven S. Unpingco who issued a warrant based on probable cause. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts." Illinois v. Gates, 462 U.S. 213, 245 (1983). Under the totality of the circumstances, there was a "fair probability that contraband or evidence of a crime" would be found within the Blue House.

The affidavit must establish "a reasonable nexus between the item to be seized and the criminal behavior alleged." Shaffer v. Wilson, 523 F.2d 175, 179 (10th Cir. 1975), *cert. denied*, 427 U.S. 912 (1976). There is a nexus between the items to be seized and the human trafficking and crime of compelled prostitution. "There must, of course, be a nexus – automatically provided in the case of fruits, instrumentalities or contraband – between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in

-12-

Case 1:08-cr-00008   Document 84   Filed 05/09/2008   Page 12 of 17

terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." Warden, Md. Penitentiary v. Hayden, 87 S. Ct. 1642, 1650 (1967). That nexus – between travel documents, passports, plane tickets, surveillance, etc. exists. Each of the items on the list of items to be seized will aid in the apprehension and conviction of defendants who commit the offenses of prostitution and human trafficking.

## V.   THE OFFICERS ACTED WITH DUE DILIGENCE AND OBTAINED THE WARRANT WITHIN A REASONABLE TIME.

The duration of the seizure in this case did not render it unreasonable. The duration of the intrusion must be considered in context. It commenced at approximately 8-9:00 a.m. on January 13, 2008 (Sunday morning) and concluded with the signing of the warrant at 10:25 a.m. on January 14, 2008 (Monday morning). For most of this time, "it is reasonable to assume that judicial officers are not readily available for consideration for warrant requests." Segura v. United States, 468 U.S. 796, 812-13, (1984). It is also reasonable to assume that Officer John Perez spent the balance of the delay preparing a complete and accurate affidavit and presenting it to the judicial officer who issued the warrant. There is no evidence that Officer Perez purposely delayed this process in an exercise of bad faith. "We hold therefore, that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." Segura v. United States, 468 U.S. 796, 811 (1984). The temporary seizure, supported by probable cause was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time. Notably, defendant stayed at his premises while the investigation was ongoing. After the seizure, Defendant was permitted to enter and obtain necessary medical items. The delay was not unlawful.

//

//

## VI. THE WARRANT SET FORTH THE ITEMS TO BE SEIZED WITH PARTICULARITY.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV.

The purpose of the particularity requirement is to make general searches impossible. Marron v. United States, 275 U.S. 192 (1927). The evil to be prohibited is the "exploratory rummaging in a person's belongings." Andresen v. Maryland, 427 U.S. 463 (1976) quoting Coolidge v. New Hampshire, 403 U.S. 443 (1971). A warrant must leave the executing officers no discretion as to what items are to be seized. Marron, 275 U.S. at 196. However, the warrants' description of items need only be "reasonably specific rather than elaborately detailed.' United States v. Storage Spaces Designated Nos. 8 and 49, 777 F.2d 1363 (9th Cir. 1985). The degree of specificity required is flexible and may vary depending on the circumstances and the type of items involved. U.S. v. Apker, 705 F.2d 293, 299 (8th Cir. 1983). "In determining whether a warrant is sufficiently particular, we consider one of more of the following factors: 1) whether probable cause exists to seize all items of a particular type described in the warrant; 2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and 3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." U.S. v. Adjani, 452 F.3d 1140 (9th Cir. 2006).

First, there is probable cause to seize items related to human trafficking or prostitution. The particular type of items are tickets, travel, currency, surveillance, and other items which are the proceeds of this type of behavior and related to obtaining persons, confining them to the Blue House, and coercing them to perform sexual acts, and receiving anything of value in exchange

-14-

for these sexual acts. Items 7 and 9 focus on illegally obtained proceeds including the form they make take after a defendant attempts concealment.

Second, the warrant has objective standards which set forth the type of items to be seized, and those which are not. Here, the warrant permits the seizure of items pertaining to prostitution and human trafficking of persons. The warrant permits the search and seizure of photographs, surveillance equipment, records or documents concerning prostitution or human trafficking, identification, cash, currency and other illegally obtained proceeds, books, ledgers, airline tickets, money orders, passports and other documents relating to obtaining persons for purpose of prostitution or human trafficking, transaction and financial instruments which would indicate proceeds of transactions, records of cash expenditures that are the proceeds of prostitution or human trafficking, telephone records, identification records, and trace evidence consisting of bodily fluids.

Third, the government was able to describe the items particularly given the information available to it at the time the warrant was issued. The Officers knew that young women were induced to travel, that money was withheld from the victims. Therefore the warrant permitted seizure of travel documents and money. Given the amount of information known at the time, the listed items are sufficiently particular. The Officers had a limited, specific and particular list to guide the seizure. A review of the Attachment reveals that the Court has provided reasonable guidance to the Officers in the exercise of their discretion. The list of items to be seized is not a conclusory, non descriptive list. Instead, it provides a focused list to the Officers to seize only items reasonably related to proof of prostitution and human trafficking.

Defense contends that paragraphs seven (7) and paragraphs nine (9) are overbroad.

> "7. Illegally obtained proceeds derived from violations of federal or state statutes concerning prostitution and/or human trafficking such as U.S. currency, gold, silver, stocks, bonds, expensive electronic equipment and the like."
>
> "9. Currency, financial instruments, precious metals, jewelry, vehicle registration

receipts, property title, and other items of value and/or proceeds of transactions relating to obtaining, transferring, secreting, profiteering or spending large sums of money made from engaging in prostitution or human trafficking."

"Although technical precision of description is not required, United States v. Drebin, 557 F.2d 1316, 1322 (9th Cir. 1977), cert denied, 436 U.S. 904, the warrant must so circumscribe an officer's actions that the issuing magistrate can determine that the search in all of its dimensions is based upon probable cause and particular descriptions. United States v. Hillyard, 677 F.2d 1366, 1339 (9th Cir. 1982).

Paragraph 7 authorizes the seizure of proceeds, which can range from cash to electronic equipment. This paragraph specifically describes the type of item sought. Paragraph 9 authorizes seizure of property which may be a cover for large expenditures of money made from engaging in prostitution or human trafficking. This paragraph indicates property titles, car registrations, as well as cash. Applying a commonsense and realistic analysis, the descriptions are valid and clear. The Officers sought items related to human trafficking and prostitution and the profits thereof. "A general description may be acceptable in a warrant if a more precise description is not possible." U.S. v. Cardwell, 680 F.2d 75 (9th Cir. 1982). The descriptions are not overbroad and do not authorize an exploratory general search. Even if the descriptions are considered overbroad, it is a well settled principle "that a warrant's overbreadth can be cured by an accompanying affidavit that more particularly describes the items to be seized." U.S. v. Hillyard, 677 F.2d 1336, 1340 (9th Cir. 1082). The remedy for an overbroad warrant is not suppression. "To the contrary, the remedy for an overbroad warrant is to sever the overbroad portions of the warrant from those portions that are sufficiently particular." U.S. v. Popham, 250 Fed Appx. 170 (6th Cir. 2007). The warrant is sufficient and particularly describes the property to be seized from the Blue House.

//

//

## CONCLUSION

Under the totality of the circumstances, there is ample and sufficient information known to the Police and presented to the Judge to meet the probable cause standard for the Search Warrant. The articulable facts, taken together with rational inferences from those facts, justify the search of the Blue House and seizure of items related to prostitution and human trafficking. The warrant was sufficiently particular and is not overbroad. The evidence should not be suppressed. The currency seized should not be returned to In Han Cha because the criminal case is pending and a forfeiture allegation has been made. Defendant's motion should be summarily denied.

Dated this 9th day of May, 2008.

                                  LEONARDO M. RAPADAS
                                  United States Attorney
                                  Districts of Guam and CNMI

                     By:  /s/ Rosetta L. San Nicolas
_____  ROSETTA L. SAN NICOLAS
                                  Assistant U.S. Attorney